No. 2515.—Succession of WILLIAM S. STEELE.

The value of improvements placed upon community property after its dissolution can not be taken into account in the settlement of the succession. In such a case its actual value, or what it will sell for, is to be taken as the basis of the account without reference to the original cost or the cost of any improvements made upon it.

If the separate estate of either the husband or the wife has been increased or improved during the marriage, the other spouse or his or her heirs shall be entitled to the reward of the one-half of the value of the increase or amelioration, provided it be shown that such increase or amelioration was the result of common labor, expense or industry. But if it be shown that such increase or amelioration was owing to the ordinary course of things, or the rise in the value of property, then and in such case there shall be no reward. R. C. C. 2408.

If by testamentary disposition the wife has been appointed testamentary executrix and given the usufruct of the whole estate of her husband, she may, on the application of the heirs or the legatees, be required to give security.

APPEAL from the Parish Court of Jefferson. *Breuning*, Parish Judge. *N. Commandeur* and *R. King Cutler*, for appellant. *Hy. Dugue*, for appellee.

HOWELL, J. This controversy involves oppositions to two accounts, original and supplemental, filed by the testamentary executrix, and the rights of certain legatees under the provisions of the will of deceased.

The original account contains a statement of the real estate of the community, inventoried at $2500, and movables inventoried at $46, and of the separate property of the deceased, consisting, first, of the proceeds of property expropriated to the city of New Orleans amounting to $2500, from which is deducted amount of vouchers one and two ($108 66), leaving $2391 34 net, and second, proceeds of Magnolia street property belonging to the decedent before, and improved and sold after marriage for $4000, one-fourth cash, balance in three notes of $1000 each, from which is deducted cost of improvements and expenses as per vouchers three to ten ($2547 35), leaving $1452 65 net, making the separate assets amount to $3843 99; from this are deducted $1800, amount of two mortgage notes executed by the deceased before and paid after marriage, as per vouchers eleven and twelve, $530 funeral expenses, as per vouchers thirteen to fifteen, $439 10, judicial charges, as per vouchers sixteen to eighteen, and $100 for probable additional costs, leaving $974 89 as separate funds, but entered or described in the account as due by the community to the succession. The executrix then credits herself with $1000, brought in marriage by her, and $202 bills paid by her as per vouchers nineteen to twenty-three, from which she deducts the rents of community property collected by her, $273, less $90, paid for repairs, as per voucher twenty-four, leaving a balance in her favor of $1019, to the extinguishment of which she applies the above balance of $974 89, leaving a deficit of $44 11 to be paid her out of the community before dividing it between herself and the heirs, and she claims the full ownership of the one-half of the remaining community property as surviving widow and the

usufruct of the other half under the will. The supplemental account simply consists of items of taxes and insurance paid by her as per vouchers twenty-five to thirty-five, and increasing the amount due her from $44 11 to $233 21.

The father and brothers of the decedent, named as legatees, oppose both accounts as incorrect in this, that to the community property should be added $800 for a house erected thereon, and several articles specially described and valued at $283, and to the separate property a watch and chain worth $125; that the sum of $700 due by Mr. and Mrs. Bremer, and $500 due by Mr. and Mrs. Heffernan, are omitted; that nothing is due to the widow, and the sums shown by the various vouchers, except numbers one, two, sixteen, seventeen and eighteen are unfounded in law or charged to the wrong estate, and the father asks to be put in possession of one-third of the succession bequeathed to him, and the brothers ask that the widow furnish bonds as usufruct-uary of the residue. The appraisers and parish recorder oppose, claiming their fees, which are admitted. The parish judge rendered judgment allowing the fees of the appraisers and recorder out of the sum reserved for costs, increasing the amount in favor of the widow to $483 21, to be paid out of the community property, thus absorbing all the separate property of the husband, recognizing her as owner of one-half of the community property, and entitled to the usufruct of the other half thereof under the will, as not exceeding the disposable portion, and homologating the account as thus amended at the costs of the heirs, who have appealed.

The record contains a large mass of irregular, confused unnecessary proceedings, and irrelevant, conflicting evidence, out of which it is difficult, if not impossible, to ascertain and adjust the rights of the parties, and we have given the foregoing analysis of the accounts and judgment, which we can neither sustain nor amend, in order that our views of the law applicable to the issues involved may be understood in the construction of another and more correct account.

The demand that the value of a house, erected on the community property, should be added to the account can not prevail, as the property existing in kind must be accounted for at its actual value, or what it may sell for, without reference to the original cost or the cost of any additions. As to the several articles, which it is alleged should be accounted for, the evidence shows that some belonged to the widow and others were disposed of by the husband prior to his death. The proof shows that Dennis Heffernan owes the succession $400, not embraced in either inventory or account. His acknowledgment of this indebtedness is conclusive against him in favor of the succession, and is one of its assets to be accounted for. The amount due by F. W. Bremer is shown to be due to the widow in her own right. Vouchers

one and two are admitted as properly deducted from the sum received from the city for the expropriation of the Clara street (separate) property, the amount of which was $2300, instead of $2500, as put down in the account, and the deduction as above makes the balance $2191 34 The vouchers three to ten purport to be for the cost of improvements put on the Magnolia street (separate) property during the marriage. It was purchased and, from the evidence, paid for prior to the marriage, and is stated by the agent of the legatees and heirs to have been then (December, 1859,) worth $1200, and was sold in 1867, just before the decease, for $4000, and the widow contends that the value thereof was enhanced to the extent of the cost of the improvements as per above vouchers, amounting to over $2500, leaving the separate interest of the succession therein about $1400. The rule on this subject is found in article 2403 R. C. C., which reads: "when the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one-half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry, but there shall be no reward due if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property or to the chances of trade." The mode of ascertaining this augmentation is announced in the case of Babin v. Nolan, 4 R. 278; 6 R. 508; 8 R. 181; 10 R. 373, and approved in 12 R. 385; 2 An. 30; 3 An. 611, and 6 An. 634. It is, to estimate the property according to its value at the time of the dissolution of the community, but, if possible, in the situation in which it was at the time of the marriage, and then its real value with all the improvements thereon in the condition in which it was at the time of the dissolution of the community, and the difference between the two estimations will form the increase, for one-half of which the surviving spouse should be compensated in the settlement of the community, according to the article above quoted. As the property in this case did not exist in kind at the dissolution of the community, and the husband had received one-fourth of its proceeds prior to his death, and the widow acknowledges possession of two of the three notes given for the balance of the price, this price must be taken as one of the estimations and the other estimation must be of it, in its condition at the time of the marriage; that is, ascertain its value at the time of the sale by the deceased in the condition in which it was at the date of the marriage, and the *difference* between this estimation and the sum for which it was sold will be the increase, for one-half of which the widow is to be compensated, and the balance of the said price, consisting of the whole of the first estimation and half of the difference between it and the whole price, will belong to the succession.

Succession of Steele.

Voucher eleven, objected to, is a note for $1000 made by the husband before, but paid after, marriage, and in the absence of proof is presumed to have been paid with community funds, and is a charge in favor of the community against the succession. Voucher twelve is a note for $800 paid prior to marriage, and should not appear in the account. Vouchers thirteen and fourteen are objected to only as charges against the succession. They are funeral charges, incurred after death, and are debts of the succession. R. C. C. Voucher fifteen is a receipt for $400, cost of building a tomb, after the decease, and is not allowable out of the means of the estate, as it forms no part of the funeral expenses and should not be in the account. See 19 L. 426. Vouchers sixteen, seventeen and eighteen are not opposed. Vouchers nineteen to twenty-three are physicians' and druggists' bills, some before and some during the last illness of the deceased, and there being no contest as to privilege, are allowable as debts of the community. Voucher twenty-four is for repairs to the community property after the decease and was properly deducted from the rents. Vouchers twenty-five and twenty-six are for taxes on community property paid prior to the death of the husband and can have no place on the account, the revenues or use of the property meeting all such expenditures. Vouchers twenty-seven to thirty-five, except No. 33, are for taxes and insurance subsequent to the decease, and their disposal is dependent on the question of usufruct, to which we will come presently. Voucher thirty-three is a notarial bill paid during the marriage and should not be in the account. There is no express opposition to the item of $1000 cash brought into marriage by the wife, but evidence has been introduced sufficient to establish its correctness. The opposition to the fees of counsel is waived.

The will is in the following words: " I do hereby make and constitute my beloved wife, Barbara Grau, to be my sole executrix, giving her hereby full seizin and detainer of all my estate. In case my father, now in Ireland, should survive me, I will and bequeath to him the portion of my estate to which he shall be entitled by the laws of Louisiana. I will and bequeath to my said wife surviving me, and in case she should not again marry, the usufruct of all the estate and property I may die possessed of, to be by her enjoyed during her natural life, and at her death or in case of her marriage again, I make and constitute my said father, James Steele, and in case of his decease anterior to hers, then to my brothers, Hugh Steele, John Steele and Harper Steele and Robert Steele, or the survivors, to be by them equally enjoyed and the property divided between them as my residuary legatees; hereby revoking all former wills and codicils by me heretofore made, holding these presents alone valid."

Though somewhat obscurely drawn, we must construe the foregoing
93

to give to the father, who was alive at the date of the testator's death,. one-third of the latter's estate and the usufruct of the balance to the wife during her life or widowhood, and then the property, which is. subject to the usufruct, to pass to the father or his brothers as named in the will.

After the payment of the debts, one-third of the succession, consisting of all the separate property of the husband and one-half of the community property, must be delivered to the father and the other . two-thirds to be held in usufruct by the widow under the will. In making this partition the father must bear his proportion of the taxes, and insurance on the property partitioned accruing since the death of the testator.

To sum up. The account should set forth the community property and funds; the separate property or estate of the deceased, less one-half of the increased value thereof caused by improvements made by the community; the community debts to be paid out of the community funds, and the charges against the succession or separate estate proper of the deceased to be paid out of said succession or estate, and the partition made as above stated, the widow to furnish security to be, fixed by the judge below; and for this purpose

It is ordered that the judgment appealed from be reversed and this. cause remanded to the lower court, and the executrix required to file an account in accordance with the foregoing views and the necessary proceedings had in accordance with law; costs of appeal to be paid. by the widow and appellee.